```
                    UNITED STATES DISTRICT COURT
                       DISTRICT OF RHODE ISLAND
_____
                                   )
UNITED STATES OF AMERICA,          )
For The Use and Benefit of         )
J.H. LYNCH & SONS, INC.,           )
                                   )
      Plaintiff,                   )
                                   )
            v.                     )   C.A. No. 10-366 S
                                   )
TRAVELERS CASUALTY & SURETY        )
COMPANY OF AMERICA and HONEYWELL   )
BUILDING SOLUTIONS SES CORP.,      )
                                   )
      Defendants.                  )
_____)
```

**ORDER AND OPINION**

WILLIAM E. SMITH, United States District Judge.

In this suit brought under the Miller Act, 40 U.S.C. § 3133,[1] use Plaintiff J.H. Lynch & Sons, Inc. ("Lynch") seeks payment from Defendants Travelers Casualty & Surety Company of America and Honeywell Building Solutions SES Corporation (collectively, "Defendants") for Lynch's work on a project at the Naval Station in Newport.

---

[1] The Miller Act, 40 U.S.C. § 3133(b)(2) states:

> A person having a direct contractual relationship with a subcontractor but no contractual relationship, express or implied, with the contractor furnishing the payment bond may bring a civil action on the payment bond on giving written notice to the contractor within 90 days from the date on which the person did or performed the last of the labor or furnished or supplied the last of the material for which the claim is made.

Defendants move to dismiss the action, pursuant to Fed. R. Civ. P. 12(b)(6). In the alternative, Defendants ask the Court to declare Defendants' liability limited to the amount determined to be due to Lynch in the Navy's resolution of Honeywell's request for an equitable adjustment ("REA") of the underlying contract price, and to stay the litigation pending resolution of the REA process. Defendants also move to consolidate the matter with a related case, <u>United States ex rel. Arden Eng'g Constructors, LLC v. Honeywell Bldg. Solutions SES and Travelers Cas. & Sur. Co.</u>, C.A. No. 10-365 S.

I. Background

The following facts are gleaned from the complaint. On July 10, 2008, the Navy awarded Honeywell a contract on a federal project at the Navy Station in Newport. To meet the requirements set forth in the Miller Act, Honeywell obtained a payment bond from Travelers as surety. In the payment bond, Honeywell and Travelers agreed to be bound jointly and severally for the payment of contractors and subcontractors furnishing labor and materials on the project in the event Honeywell failed to make prompt payment.

In August 2009, Honeywell contracted with Arden Engineering Constructors, LLC to provide labor, materials, and equipment in connection with the project (the "Honeywell-Arden Contract"). Arden in turn subcontracted with Lynch on August 26, 2009 to

2

furnish labor, materials, and equipment on the project (the "Arden-Lynch Contract").  Lynch completed its work on June 23, 2010, but alleges that it is still owed $575,002.74 under its contract, plus interest and costs.

On September 3, 2010, Lynch brought this suit pursuant to the Miller Act, alleging that it is entitled to payment by Defendants under the payment bond.

## II. Discussion

### A. Motion to Dismiss

When ruling on a motion to dismiss, a court must accept "the truth of all well-pled facts" on the face of the complaint, and draw all reasonable inferences in favor of the plaintiff. Giragosian v. Ryan, 547 F.3d 59, 63 (1st Cir. 2008).  A complaint will survive a motion to dismiss if it "contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  Tasker v. DHL Ret. Savings Plan, 621 F.3d 34, 39 (1st Cir. 2010) (quoting Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009)) (internal quotation and citation omitted).

In addition to the well-pled facts on the face of the complaint, the Court may also consider the exhibits to the complaint, see Trans-Spec Truck Serv., Inc. v. Caterpillar Inc., 524 F.3d 315, 321 (1st Cir. 2008), and the Honeywell-Arden and Arden-Lynch Contracts attached to Defendants' motion to dismiss.

3

The Contracts are "explicitly relied upon in the complaint, even though [they are] not attached" thereto, id. (quoting Shaw v. Digital Equip. Corp., 82 F.3d 1194, 1220 (1st Cir. 1996)), and therefore may properly be considered.[2]

In ruling on this motion to dismiss, the Court will not consider Exhibit B to Defendants' motion to dismiss, nor convert the instant motion into a motion for summary judgment. Exhibit B comprises a purported e-mail from counsel for Honeywell to counsel for Arden and an incomplete set of the e-mail's attachments. (See E-mail from Steven R. Lindemann to Joseph Reale (Sept. 5, 2010, 13:53 EST), Ex. B to Defs.' Mot. to Dismiss, ECF No. 6.) Appended to the e-mail are a letter from a representative at Honeywell to a contracting officer with the Navy and an excerpt of an "Equitable Cost Adjustment" spreadsheet. Lynch does not rely on the e-mail and its attachments in its complaint, and they do not fall within the limited scope of the Court's consideration of the motion to dismiss. See Gargano v. Liberty Int'l Underwriters, Inc., 572 F.3d 45, 47 n.1 (1st Cir. 2009) (noting that while a court's consideration is generally confined to the complaint on a Rule

---

[2] While Lynch refers to the Contracts attached to the motion to dismiss as the "purported contracts," (Pl.'s Obj. to Defs.' Mot. to Dismiss & Mot. to Stay 4), Lynch also refers back to them in its objection and does not argue that they are not authentic, just that one of the appended copies is unsigned. Therefore, the Court deems it appropriate to consider the contracts here.

12(b)(6) motion, courts make "narrow exceptions for documents the authenticity of which are not disputed by the parties; for official public records; for documents central to plaintiffs' claim; or for documents sufficiently referred to in the complaint" (quoting Watterson v. Page, 987 F.2d 1, 3-4 (1st Cir. 1993))).

In support of their motion, Defendants argue that while Lynch may have a right to initiate a Miller Act claim within one year of Lynch's last date of work on the project, other provisions in Lynch's subcontract waive this right until the Navy decides the REA. For the reasons set forth below, the Court concludes that, viewing the complaint and the contracts in the light most favorable to Lynch, Lynch has pled a plausible claim for relief under the Miller Act; that it is premature to render a conclusive determination as to whether Defendants' liability is limited to the outcome of the Navy's resolution of the REA; and therefore, a stay in the instant litigation is not warranted.

Defendants point to contractual provisions in the Arden-Lynch and Honeywell-Arden Contracts that purportedly bind Lynch to the outcome of the Navy's decision on the pending REA. (See Defs.' Mot. to Dismiss 3, 6-10 (citing Honeywell-Arden Contract ¶ 12.3.1; Arden-Lynch Contract ¶ 5.3.2.)) At this point it is not clear what, if any, effect these provisions may have on

Lynch's claim under the Miller Act. The provisions appear to refer only to delay claims, and nowhere in the complaint does Lynch state that it seeks payment in connection with a delay claim. Discovery may shed more light on the issue, but looking only to the allegations set forth in the complaint and to the two contracts, these contractual provisions do not appear to impair Lynch's right to recover from Defendants under the Miller Act.[3]

Defendants also contend that certain provisions in the Arden-Lynch Contract limit Arden's obligation to pay Lynch for completed work. Paragraphs 8.2.5 and 8.3.3 of the Arden-Lynch Contract, generally referred to as "pay-when-paid" clauses, state that Arden does not have to pay Lynch for subcontract work

---

[3] Defendants also argue that the Arden-Lynch Contract requires Lynch to partake in the Navy REA resolution process. Article 11, Paragraph 4 states:
> The parties agree that to the extent permitted by Subcontract Document all parties necessary to resolve a claim shall be parties to the same dispute resolution proceeding. To the extent disputes between the Contractor [Arden] and Subcontractor [Lynch] involve in whole or in part disputes between the Contractor [Arden] and the Owner [Honeywell], disputes between the Subcontractor [Lynch] and the Contractor [Arden] shall be decided by the same tribunal and in the same forum as disputes between the Contractor [Arden] and the Owner [Honeywell].

(Arden-Lynch Contract ¶ 11.4.)

However, the preceding paragraph of the contract, ¶ 11.3, states that "[n]othing in [Article 11] shall limit any rights or remedies not expressly waived by [Lynch] which [Lynch] may have under lien laws or payment bonds." (Emphasis added.) Thus, the Court does not read ¶ 11.4 as limiting Lynch's rights or remedies under the Miller Act.

until Arden first receives payment from Honeywell. Along the same lines, the Arden-Lynch contract also states that any adjustment to the subcontract price for unknown physical conditions discovered during Lynch's work is "limited to the adjustment [Arden] receives from [Honeywell] on behalf of [Lynch]." (Arden-Lynch Contract ¶ 7.3)

Defendants argue that the "pay-when-paid" clauses and the price-adjustment clause render Lynch's Miller Act claim premature. In other words, they argue that because Arden has not yet been paid, under the pay-when-paid and price-adjustment clauses, Lynch does not have a claim to payment.

Lynch brings this suit under the Miller Act, which provides a cause of action for a subcontractor to recover payment from a general contractor with whom it has no direct contractual relationship. See 40 U.S.C. § 3133(b)(2). The Supreme Court has noted that the Miller Act is "highly remedial in nature," and should be construed and applied liberally to "effectuate the Congressional intent to protect those whose labor and materials go into public projects." United States ex rel Sherman v. Carter, 353 U.S. 210, 216 (1957) (internal quotations and citation omitted). It is well established that a pay-when-paid clause in the circumstances at bar does not foreclose a subcontractor's right to bring suit for payment under the Miller Act against a general contractor and its surety. See United

7

States ex rel Walton Tech., Inc. v. Weststar Eng'g, Inc., 290 F.3d 1199, 1209 (9th Cir. 2002) ("A subcontractor that has performed as agreed need not await the Government's payment of the contractor before initiating an action under the Miller Act against the contractor or the surety."); see also United States ex rel. T.M.S. Mech. Contractors, Inc. v. Millers Mut. Fire Ins. Co. of Tex., 942 F.2d 946, 949 n.6 (5th Cir. 1991) (holding that a pay-when-paid clause does not preclude a subcontractor from recovering under the Miller Act); United States ex rel. McKenney's, Inc. v. Gov't Tech. Servs., LLC, 531 F. Supp. 2d 1375, 1379 (N.D. Ga. 2008) (same); United States ex rel. Straightline Corp. v. Am. Cas. Co. of Reading, C.A. No. 5:06-00011, 2007 WL 2050323, at *4 (N.D. W. Va. Jul. 12, 2007) (same). Indeed, common sense dictates that it would defeat the policy underlying the Miller Act to read a pay-when-paid clause as precluding a subcontractor from bringing suit until its contractor receives payment.[4]

---

[4] Defendants contend that Jefferson Constr. Co. v. United States ex rel. Bacon, 283 F.2d 265, 267 (1st Cir. 1960), demands a different result. But Jefferson is not inconsistent with the Court's position here. Jefferson holds that the Miller Act does not furnish a use plaintiff with an action for quantum meruit in derogation of the express terms of its contract. Id. at 267. In so holding, the First Circuit distinguished Jefferson, in which the plaintiff argued that his contract was of no consequence to his suit, from other cases where courts had held that pay-when-paid clauses were not enforceable because they were contrary to the policy underlying the Miller Act. Id. The facts here are more closely aligned to those latter cases.

Defendants argue that if the complaint is not dismissed, under this Court's decision in United States ex rel. D'Ambra Constr. Co. v. St. Paul Mercury Ins. Co., 24 F. Supp. 2d 218 (D.R.I. 1998), they are entitled to a ruling that their liability is limited to that determined by the Navy during the REA process. In D'Ambra, the subcontract agreement between the general contractor and D'Ambra, the subcontractor, contained a pay-when-paid clause, limiting D'Ambra's payment to what the government paid the general contractor for its work. Id. at 222. After a number of adverse events, D'Ambra filed suit in federal court under the Miller Act in search of payment. Id. at 219. While the suit was pending, the parties participated in an administrative claims process, which ended in settlement. Id. at 220. Evidently unsatisfied with the settlement payment, D'Ambra pursued its federal suit. Id. The Court held that the contract between the parties limited D'Ambra's claim to the administrative process it had already received. Id. at 222.

D'Ambra can be distinguished from the instant case on a number of grounds; most notably, D'Ambra was decided on a motion for summary judgment after the parties had participated in an administrative claim process. Here, there are no facts in the complaint or the two contracts suggesting that the REA process is underway (let alone complete). It very well may be that the price-adjustment clause (¶ 7.3 of the Arden-Lynch Contract) will

9

serve to limit Lynch's claim against Defendants at some point, but it is premature for the Court to make such a ruling at this time.

Lynch's Miller Act claim is cognizable, regardless of whether the Court is able to determine the amount Defendants owe Lynch at this time. Perhaps discovery will reveal the amount of payment, if any, due to Lynch. Because Lynch has stated a plausible claim for relief under the Miller Act, the Court must deny Defendants' motion to dismiss.

B. Request to Stay Litigation

As an alternative to dismissal, Defendants request that the Court stay the matter pending resolution of the Navy's decision on the REA. Defendants argue that the case is not ripe and that Lynch would not be prejudiced by a stay of the litigation because a decision by the Navy is a prerequisite to Lynch's receipt of payment.

The Court declines to stay the action at this time. The Court has some concern that having disputes over payment for this project pending in three places--namely, this Court, the related Honeywell-Arden arbitration, and the Navy's REA process—will result in wasted resources; however, given the uncertainty surrounding the expected length of the REA process, the Court is not satisfied that Lynch would not be subject to undue prejudice

if this litigation were stayed indefinitely pending that outcome.

C. Motion to Consolidate

Defendants have also moved to consolidate[5] this action with the related case, <u>United States ex rel. Arden Eng'g Constructors, LLC v. Honeywell Bldg. Solutions SES and Travelers Cas. & Sur. Co.</u>, C.A. No. 10-365 S (hereinafter the "Arden suit"). The Arden suit was brought against these same Defendants in connection with this same project.

In an Opinion and Order filed in the Arden suit, this Court denied Defendants' motions to dismiss and to consolidate the Arden suit with the instant suit. (<u>See</u> Opinion and Order, C.A. No. 10-365 S, Jan. 31, 2011.) To the Court's knowledge, Arden and Honeywell are currently arbitrating the merits of their dispute. Lynch, however, is not required to arbitrate, and thus the Court believes it is more appropriate to maintain these suits as separate actions in order to prevent prejudice to Lynch.

There is no question that the two cases do involve some common issues of fact and law, and there may be a time in the future when consolidating the suits would make good sense, but for now, the Court denies Defendants' motion to consolidate.

---

[5] Under Fed. R. Civ. P. 42(a), a court may consolidate two actions if they "involve a common question of law or fact."

11

III. Conclusion

For these reasons, Defendants' motion to dismiss, request to stay, and motion to consolidate are DENIED.

IT IS SO ORDERED.

*/s/ William E. Smith*
William E. Smith
United States District Judge
Date: April 22, 2011